# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

Feb 20 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/ VeronicaCota      DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Apple iPhone
Model: 15 Pro Max
Seized as FP& F: 2025255200007501 Item: 0003

)
)
)
)
)
)

Case No.    25MJ8120

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date:    02/20/2025

*Judge's signature*

City and state:   El Centro, California

HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2**:              iPhone Cellphone
                Model: 15 Pro Max
                Seized as FP& F: 2025255200007501 Item: 003
                Seized from Fernando LEYVA, Jr.
                **(Target Device #2)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of January 20, 2025, up to and including February 20, 2025, and is limited to the following:

a.    tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.    tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.    tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.    tending to identify the user of, or persons with control over or access to, the Target Device;

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

## **AFFIDAVIT**

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

### **INTRODUCTION**

1.    I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**          Samsung Cellphone
                 Model: Galaxy S20
                 Seized as FP& F: 2025255200007501 Item: 002
                 Seized from Ricardo ALARCON-Ochoa
                 **(Target Device #1)**

**A-2:**          iPhone Cellphone
                 Model: 15 Pro Max
                 Seized as FP& F: 2025255200007501 Item: 003
                 Seized from Fernando LEYVA, Jr.
                 **(Target Device #2)**

as further described in Attachments A-1 to A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.    The requested warrant relates to the investigation and prosecution of Fernando LEYVA, Jr. (LEYVA) for transportation of illegal alien Ricardo ALARCON-Ochoa (ALARCON) (the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from LEYVA and the Material Witness on or about February 19, 2025, incident to the arrest of LEYVA and the Material Witness. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.    Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not

1

set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.    I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.    I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.    Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers

and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.     The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones

that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.    This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10.    On February 19, 2025, at approximately 12:00 p.m., Anti-Smuggling Unit (ASU) Agents were conducting surveillance on a white Nissan Maxima (Nissan) travelling westbound on Highway 98 in Calexico. This Nissan is a known alien smuggling conveyance and Agents had previously obtained a tracker warrant for this vehicle. ASU Agents continued surveillance on the Nissan as it travelled on Highway 98 then back eastbound towards the city of Calexico. Video camera operator (V1) was unable to confirm

4

if the Nissan had picked up anyone so ASU Agents continued mobile surveillance. Agents followed the vehicle into El Centro.

11.   In El Centro, the Nissan entered the El Centro Regional Medical Center parking lot and remained parked. At this time, ASU Agents again strategically parked their unmarked service vehicles in and around the area and continued surveillance on the Nissan. After approximately thirty minutes, ASU Agents observed a white Ford mustang (Ford) bearing California license plates enter the parking lot. ASU Agents observed that the Ford was driven by a male, later identified as LEYVA, and there were no additional passengers in the Ford. ASU Agents continued to watch as the Ford parked next to the Nissan and both LEYVA and the driver of the Nissan began talking. After conversing, Agents observed the doors to both vehicles open and close. The Ford then drove away from the Nissan, now with a front seat passenger, later identified as Ricardo ALARCON-Ochoa, who appeared to be changing his shirt. At this time, Agents terminated surveillance on the Nissan and initiated mobile surveillance on the Ford.

12.   Agents kept constant visual on the Ford as it travelled northbound into the city of Brawley. Once in Brawley, the Ford parked in an apartment complex parking lot, went to a tire shop and then drove to another apartment complex before traveling onto Highway 111. ASU Agents could clearly see that LEYVA still had his front seat passenger. The Ford then travelled southbound on Highway 111, into the city of Calexico and then back to El Centro until it reached the intersection of Hope and State Street. ASU Agents watched as ALARCON, who was wearing a reflective shirt and reflective hat, exited the Ford and walked towards a black sedan.

13.   At this time, ASU Agents activated the emergency lights and sirens of their unmarked service vehicles and approached LEYVA, ALARCON, and the black sedan with Border Patrol markings and insignia fully visible. Agents identified themselves as Border Patrol Agents to LEYVA, ALARCON and the driver of the black sedan and questioned them as to their citizenship. Supervisory BPA M. Clinton questioned LEYVA as to his citizenship. LEYVA stated he was a United States citizen. BPA L. Heipt questioned

ALARCON as to his citizenship and ALARCON admitted to being in the United States illegally. ALARCON also admitted that he was a citizen of Mexico and had made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry. LEYVA and ALARCON were placed under arrest and were transported to the Calexico Border Patrol station for further processing.

14.    During a post-Miranda statement, LEYVA stated he his friend from Mexicali called him today to ask him for a favor. The favor was for him to pick a friend up from the El Centro hospital because he does a side job of "raitero" meaning an unofficial cab driver without a license. LEYVA was going to be paid $15.00 U.S dollars to transport him to an unknown location. LEYVA stated he contacted the unknown friend in the entrance of the hospital and they were en route to Brawley to his father's apartment to wait for the call. LEYVA stated he let the unknown friend borrow his jacket and hat because he was all wet, muddy and he was cold. LEYVA stated the unknown male told him he works in the solar panels. LEYVA stated he did not know the unknown passenger was an illegal immigrant, he was only doing a favor for his friend.

15.    Material Witness ALARCON states he is a citizen of Mexico. ALARCON stated that he does not have any legal documents allowing him to live, work or remain in the United States legally.  ALARCON stated he was to pay $10,000 USD to be illegally smuggled into the United States and was headed to San Jose, California.  ALARCON stated he illegally entered the United States today by jumping the International Border Fence (IBF) near Mexicali. After crossing he was picked up by a white Nissan Altima that stopped on the side of the road. ALARCON stated he was instructed to hide on the floor of the vehicle and was not allowed to wear a seat belt. ALARCON stated he was transported to a parking area and instructed to transfer into a white Ford Mustang. ALARCON stated he got in the front passenger seat of the Mustang and was instructed to change clothes. According to ALARCON, the driver of the Mustang was a young male. ALARCON was instructed by the driver of the Mustang that he was going to be transported to a location

where a taxi was waiting for him to be transported further north. ALARCON stated that he was later arrested by Border Patrol Agents.

16.    During a search incident to arrest of LEYVA and the Material Witness, two cellphones were found: a black iPhone (Target Device #2) was found on LEYVA's person by BPA M. Clinton and LEYVA claimed ownership of this cellphone. A black Samsung cellphone (Target Device #1) was also found on LEYVA's person by BPA L. Heipt and ALARCON claimed ownership of this cellphone. All cellphones were seized as evidence.

17.    I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts.  Given this, I respectfully request permission to search the Target Devices for data beginning on January 20, 2025, up to and including February 20, 2025, the day after the arrest of LEYVA and the Material Witness.

## METHODOLOGY

18.    It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device

or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19.     Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20.     Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

## CONCLUSION

21.    Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that LEYVA and the Material Witness used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by LEYVA, the Material Witness, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_Fernando Quiroz_
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 20th day of February, 2025.

_____    03:01 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A-1
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**        Samsung Cellphone
Model: Galaxy S20
Seized as FP& F: 2025255200007501 Item: 002
Seized from Ricardo ALARCON-Ochoa
**(Target Device #1)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**        iPhone Cellphone
Model: 15 Pro Max
Seized as FP& F: 2025255200007501 Item: 003
Seized from Fernando LEYVA, Jr.
**(Target Device #2)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of January 20, 2025, up to and including February 20, 2025, and is limited to the following:

a.    tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.    tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.    tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.    tending to identify the user of, or persons with control over or access to, the Target Device;

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.